IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

WENDELL HAMMOND                                                              PLAINTIFF

V.                                                      CIVIL ACTION NO. 2:14cv119-KS-MTP

PHILLIPS 66 COMPANY, ET AL.                                              DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the Plaintiff Wendell Hammond's Motion to
Remand [10].  Having considered the submissions of the parties, the record, and the
applicable law, the Court finds that this action should be remanded to the Circuit Court
of Marion County, Mississippi.

<u>I.  BACKGROUND</u>

On November 8, 2013, Wendell Hammond filed suit against Phillips 66 Company
and numerous other Defendants in the Circuit Court of Marion County, alleging injury as
a result of being exposed to asbestos while working in the oil industry from
approximately 1968 until 1979.  (*See* Compl. [10-1].)  Hammond alleges that he suffers
from asbestosis and related lung disease because of his frequent and sustained
exposure to drilling mud additives and products containing asbestos that were
negligently and defectively designed, manufactured, marketed, distributed, and sold by
each Defendant.  (*See* Compl. [10-1] at pp. 1, 5-6.)  Hammond charges the Defendants
with, *inter alia*, negligence, defective manufacture, defective design, strict liability, and
negligent infliction of emotional distress under Mississippi law.  (*See* Compl. [1] at p. 7.)

The Complaint also asserts confusing claims against "Jones Act Defendants"
under "general maritime law" and the Jones Act to "the extent Plaintiff was exposed to
asbestos drilling mud and additives . . . while Plaintiff worked on oil rigs in the Gulf of

Mexico . . . ."   (Compl. [1] at pp. 7-8.)  The Jones Act authorizes an injured seaman to bring a civil action against his employer.  *See* 46 U.S.C. § 30104.  Hammond does not claim that he was employed by any named Defendant.  In April of 2014, Hammond's general maritime claims were dismissed via the state court's Agreed Order Dismissing Plaintiff's General Maritime Law Claims [10-3].

On July 28, 2014, Chevron Phillips Chemical Company LP, as successor in interest to Defendant Phillips 66 Company ("CPChem"), removed the proceeding to this Court.[1]  (*See* Notice of Removal [1].)  Removal is predicated on two grounds:  (1) Title 43 U.S.C. § 1349(b)(1) of the Outer Continental Shelf Lands Act ("OCSLA"); and (2) diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332.  The Notice of Removal provides that OCSLA jurisdiction exists because Hammond alleges that he was exposed to drilling mud products containing asbestos while he worked on Kerr-McGee's semi-submersible, which was engaged in mineral exploration or development on the Outer Continental Shelf.[2]  As to diversity jurisdiction, the Notice of Removal indicates that § 1332(a)'s amount in controversy requirement is met because Hammond seeks a judgment in an amount exceeding $75,000, exclusive of interest and costs.

---

[1] CPChem fully describes itself as follows:  "Chevron Phillips Chemical Company LP, as successor in interest to Phillips Petroleum Company f/k/a ConocoPhillips and n/k/a Phillips 66 Company, and Phillips 66 Company f/d/b/a Drilling Specialties Company."

[2] Generally, the Outer Continental Shelf ("OCS") refers to the seabed bordering the coastal states at a distance greater than three geographical miles from the coast.  *See Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 n.3 (5th Cir. 2013) (citing 43 U.S.C. §§ U.S.C. 1301(a), 1331(a)).  As to Texas, however, the OCS lies greater than three marine leagues, approximately nine geographical miles, from the coast.  *See United States v. Louisiana*, 363 U.S. 1, 9 n.6, 65, 80 S. Ct. 961, 4 L. Ed. 2d 1025 (1960); *Employers Mut. Cas. Co. v. Samuels*, 407 S.W.2d 839, 842-43 (Tex. Civ. App. 1966).

CPChem argues that complete diversity exists between Hammond and all properly joined Defendants, and that the apparent Mississippi citizenship of Defendants Oilfield Service and Supply Company, Inc. ("OSS") and GEO Drilling Fluids, Inc., individually and as successor by merger with Mississippi Mud, Inc. ("Mississippi Mud"), should be disregarded because these Defendants have been improperly joined.  CPChem contends that it timely removed the case within thirty (30) days of its receipt of Hammond's deposition transcript, which enabled CPChem to ascertain that the case was removable.

On August 23, 2014, Hammond filed his Motion to Remand [10].  Hammond does not allege any procedural defects in removal in support of his remand request.  Instead, Hammond challenges the existence of federal jurisdiction under OCSLA and 28 U.S.C. § 1332.

## II.  DISCUSSION

### A.    General Removal Standards

"A district court has removal jurisdiction in any case where it has original jurisdiction."  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (citing 28 U.S.C. § 1441(a)).  "The removing party bears the burden of establishing that federal jurisdiction exists."  *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253-54 (5th Cir. 1961)).  A motion to remand alleging a procedural defect in removal must be brought within thirty (30) days of the filing of the notice of removal, but "the case shall be remanded" at any time before final judgment if it appears that subject matter jurisdiction is lacking.  28 U.S.C. § 1447(c).  Since federal courts are of limited jurisdiction and removal raises significant

federalism concerns, the "removal statutes are to be construed strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996) (citations omitted).  Courts are to consider "jurisdictional facts as they existed at the time of removal" in ruling on a motion to remand.  *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995).

### B.      OCSLA Jurisdiction, 43 U.S.C. § 1349(b)(1)

Section 1349 states in pertinent part:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . .

43 U.S.C. § 1349(b)(1).  The United States Court of Appeals for the Fifth Circuit broadly interprets this statutory text.  *See, e.g.*, *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 401 (2014); *Barker*, 713 F.3d at 213.  In *Barker*, the Fifth Circuit articulated "a but-for test" for determining the existence of OCSLA jurisdiction, "asking whether:  (1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment."  713 F.3d at 213 (citations omitted).  In *Deepwater Horizon*, the Fifth Circuit articulated the jurisdictional inquiry in slightly different terms, but still noted that § 1349 only requires "a 'but-for' connection."  745 F.3d at 163 (citations omitted).  "Courts typically assess jurisdiction under this provision in terms of whether (1) the activities that caused the injury constituted an operation conducted on the outer Continental Shelf that involved the exploration and production of minerals, and (2) the case arises out of, or in

connection with the operation." *Id.* (citation and internal quotation marks omitted).

Hammond relies on the well-pleaded complaint rule in support of remand and argues that federal jurisdiction is lacking because, following the dismissal of his maritime claims, he only seeks to impose liability against the Defendants under Mississippi state law. Hammond's reliance on the well-pleaded complaint rule is misplaced because a "plaintiff does not need to expressly invoke OCSLA in order for it to apply." *Barker*, 713 F.3d at 213 (citing *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988)); *see also Deepwater Horizon*, 745 F.3d at 163 n.4 (finding that removal jurisdiction existed under OCSLA even though no federal claims appeared on the face of the pleadings). Furthermore, the substantive law applicable to Hammond's claims does not determine the propriety of removal under OCSLA. *See Deepwater Horizon*, 745 F.3d at 164 (rejecting the plaintiffs' attempt to intertwine the jurisdictional inquiry under § 1349 with the choice of law question); *Barker*, 713 F.3d at 220 ("Because OCSLA's jurisdictional provisions are independent from the sections outlining the applicable law, the application of the law selected by the choice-of-law analysis [was not intended to] affect the independent basis for federal jurisdiction conferred by the OCSLA.") (citations and internal quotation marks omitted). Hammond foregoing "federal law or maritime law" and solely proceeding "under Mississippi state law[]" fails to require remand. (Pl.'s Mem. of Law in Supp. of Mot. to Remand [11] at p. 5.)

Hammond also argues that remand is warranted under the Supreme Court's decision in *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S. Ct. 2870, 69 L. Ed. 2d 784 (1981). In *Gulf Offshore*, the Court considered "whether federal courts have exclusive subject-matter jurisdiction over suits arising under OCSLA . . . ." 453 U.S. at

477. The Court answered the inquiry in the negative. *See id.* at 484. Therefore, Texas courts were found to have jurisdiction over a personal injury action arising under OCSLA. *See id.*

The Court finds *Gulf Offshore* inapplicable to the subject dispute. Neither the propriety of removal nor any remand-related issue was before the Supreme Court. Further, it is well established that unless "there is an express declaration by Congress to the contrary, all types of civil actions, in which there is concurrent original jurisdiction in both federal and state courts, are removable." *Baldwin v. Sears, Roebuck & Co.*, 667 F.2d 458, 460 (5th Cir. 1982). Causes of action arising under OCSLA are clearly removable to federal court. *See Deepwater Horizon*, 745 F.3d at 164; *Barker*, 713 F.3d at 212-13. Consequently, the Supreme Court's recognition of concurrent jurisdiction between state and federal courts over OCSLA cases does not require the remand of this action.

More pertinent to the merits of OCSLA jurisdiction, Hammond asserts that the majority of his "exposure to asbestos-containing drilling mud products manufactured and sold by the defendants in this case occurred while Plaintiff was employed on land-based rigs." (Pl.'s Mem. of Law in Supp. of Mot. to Remand [11] at p. 7.) Hammond claims that out of the ten (10) years he worked in the oil industry, he only spent approximately nine (9) months working offshore. The remainder of Hammond's oil industry employment was confined to land rigs in Louisiana and Oklahoma. CPChem does not contest Hammond's representations regarding the amount of time he worked offshore versus on land.

The Court is unable to conclude that "a 'but-for' connection" exists between

Hammond's claimed injury, asbestosis, and his nine-month period of offshore employment. *Deepwater Horizon*, 745 F.3d at 163. "Asbestosis is a cumulative and progressive disease." *Porter v. Am. Optical Corp.*, 641 F.2d 1128, 1133 (5th Cir. 1981). Ordinarily, the disease results from the inhalation of asbestos fibers over a prolonged period of time. *See id.* (Asbestosis "is a culmination of body reaction to the particles inhaled during years of exposure."); *Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1214 (6th Cir. 1980) ("It ordinarily takes years of breathing asbestos fibers for asbestosis to occur.")  CPChem, as the party invoking federal jurisdiction, offers no facts, arguments, or evidence enabling the Court to conclude that Hammond would have developed asbestosis from the nine months he worked offshore regardless of the approximate nine years he worked on land-based oil rigs.  As a result, resolving all doubts regarding the propriety of removal in favor of remand,[3] the Court determines that CPChem has failed to show that Hammond's "injury would not have occurred but for his [offshore] employment." *Barker*, 713 F.3d at 213.[4]

The Fifth Circuit's retention of jurisdiction in *Barker* and *Deepwater Horizon* does not compel a different result.  In *Barker*, the plaintiff filed suit alleging emotional distress and resulting physical injuries after watching a co-worker fall to his death from a jack-up

---

[3] *See In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

[4] The Court need not decide whether Hammond's offshore employment "constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals" via *Deepwater Horizon*, 745 F.3d at 163, or whether the employment occurred on "a proper OCSLA situs" under *Barker*, 713 F.3d at 213, in light of this determination.

rig attached to the OCS. *See* 713 F.3d at 211-12. The Fifth Circuit found it to be "clear

that but for his employment, Barker would not have been involved in the incident forming

the basis of this suit." *Id.* at 213. In *Deepwater Horizon*, the requisite jurisdictional

connection existed because it was "undeniable that the oil and other contaminants

would not have entered into the State of Louisiana's territorial waters but for [Appellees']

drilling and exploration operation." 745 F.3d at 163-64 (citation and internal quotation

marks omitted). Conversely, this action is "a challenging case for asserting original

federal jurisdiction" given the uncertainty regarding whether Hammond working offshore

for less than one year could have caused him to develop asbestosis. *Id.* at 164.

CPChem has failed to meet its challenge of establishing the existence of OCSLA

jurisdiction in light of this uncertainty.

### C. Diversity of Citizenship (Improper Joinder)

An exercise of diversity jurisdiction under § 1332 depends upon two basic

requirements: (1) the amount in controversy, exclusive of interest and costs, must

exceed the sum or value of $75,000; and (2) the action must be between citizens of

different states. 28 U.S.C. § 1332. The Court finds that the first requirement is clearly

met since Hammond demands a judgment "in a sum and amount to exceed $75,000,"

exclusive of interest and costs. (Compl. [10-1] at p. 12.) However, the second

requirement is lacking.

Hammond argues that complete diversity of citizenship between the parties does

not exist because both OSS and Mississippi Mud are non-diverse Defendants.

CPChem contends that OSS and Mississippi Mud have been improperly joined since

Hammond has no possibility of recovery against them under Mississippi law. The

-8-

doctrine of improper joinder presents a narrow exception to the requirement of complete diversity, and the party invoking the doctrine bears a heavy burden. *McDonal v. Abbot Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (citation omitted). The removing party must show either of the following: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)). The first method for establishing improper joinder is not at issue here. Under the second method, "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)).[5] A mere theoretical—as opposed to a reasonable—possibility of recovery will not defeat a claim of improper joinder. *See Smallwood*, 385 F.3d at 573 n.9 (citation omitted). Nonetheless, "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.* at 573.

A court has discretion to employ one of two standards to determine whether a plaintiff has a reasonable basis for recovery against a non-diverse defendant under state law. First, the court may conduct a Rule 12(b)(6)-type inquiry, looking at the well-pleaded allegations of the complaint to decide if they adequately state a claim for relief. *Id.* (citations omitted). Second, "there are cases, hopefully few in number, in which a

---

[5] The terms "fraudulent joinder" and "improper joinder" are interchangeable, although the Fifth Circuit prefers the use of the latter. *Smallwood*, 385 F.3d at 571 n.1.

plaintiff has stated a claim, but has misstated or omitted discrete facts that would

determine the propriety of joinder.  In such cases, the district court may, in its discretion,

pierce the pleadings and conduct a summary inquiry."  *Id.* (citing *Badon v. RJR Nabisco,*

*Inc.*, 224 F.3d 382, 389 n.10 (5th Cir. 2000)).  A "court should ordinarily resolve a [claim

of] improper joinder by conducting a Rule 12(b)(6)-type analysis." *McDonal*, 408 F.3d at

183 n.6.  "[A]ny contested issues of facts and any ambiguities of state law must be

resolved in favor of remand." *Lucien*, 756 F.3d at 793 (citation and internal quotation

marks omitted).

Both Hammond and CPChem invite the Court to pierce the pleadings in

considering the propriety of OSS's joinder by citing to Hammond's deposition testimony.

Hammond testified as follows regarding OSS:

> Q.    You don't have any recollection of Oil Field Service & Supply Company out
>        of Laurel, Mississippi ever bringing mud to any of your rigs, do you?
>
> A.    That would be a long way up to Louisiana for y'all to come.  And I'm not
>        saying you wouldn't if you got the contract, but I'm -- you know --
>
> MS. HARRIS:  Answer his question.
>
> Q.    (By Mr. Fortenberry) Let me ask you this:  Do you have any recollection --
>
> A.    I don't have any recollection, no.
>
> Q.    -- of Oil Field Services & Supply Company ever bringing mud where you
>        were?
>
> A.    No, sir.

(Hammond Dep. [22] 7-20.)  This testimony would seem to negate any claim by

Hammond against OSS if one presumes that he was always present at the subject

drilling rigs and had knowledge of every shipment of mud received by each rig.

However, resolving all ambiguities in Hammond's favor, the testimony leaves open the possibility that Hammond used OSS mud after it was brought to a drilling rig at a time when he was not present. Even if Hammond's deposition could be construed to preclude any recovery against OSS, the Court must still consider the joinder of Mississippi Mud.

CPChem does not submit any summary judgment-type evidence pertaining to Hammond's claims against Mississippi Mud. Instead, CPChem argues that Hammond does not contest its "assertion that he also has no possibility of recovery against the other in-state Defendant, Mississippi Mud, Inc." (CPChem's Resp. in Opp. to Mot. to Remand [14] at p. 5.) The Court views Hammond's request for remand differently. "There are two defendants who are citizens of the state of Mississippi, neither of which are improperly joined parties." (Pl.'s Mem. of Law in Supp. of Mot. to Remand [11] at p. 7.) "There has been no fraudulent joinder of either O[SS or] . . . Mississippi Mud." (Pl.'s Mem. of Law in Supp. of Mot. to Remand [11] at p. 8.) That Hammond failed to present any evidence or cite any testimony in support of his claims against Mississippi Mud does not doom his remand request. It is CPChem, as the removing party, who bears the "heavy burden of proving that" Hammond has "no possibility of recovery . . . against an in-state defendant . . . ." *Smallwood*, 385 F.3d at 573, 574. The Court finds that CPChem has not met that burden since the allegations of the Complaint adequately state a claim for relief against Mississippi Mud under the Mississippi Products Liability Act.[6] Mississippi Mud is properly before the Court and diversity jurisdiction is absent

---

[6] It is unnecessary for the Court to address the viability of each and every claim asserted by Hammond. *See Burrell v. Ford Motor Co.*, 304 F. Supp. 2d 883, 888 (S.D.

based on the Fifth Circuit's preferred method for resolving a claim of improper joinder.

*See Smallwood*, 385 F.3d at 573 ("Ordinarily, if a plaintiff can survive a Rule 12(b)(6)

challenge, there is no improper joinder.").

Even overlooking the non-diverse citizenship of OSS and Mississippi Mud, the

Court finds that CPChem has failed to establish the existence of diversity jurisdiction.

The Fifth Circuit has "stated repeatedly that when jurisdiction depends on citizenship,

citizenship must be '*distinctly* and *affirmatively* alleged.'"  *Getty Oil Corp. v. Ins. Co. of N.*

*Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (quoting *McGovern v. Am. Airlines, Inc.*, 511

F.2d 653, 654 (5th Cir. 1975)).  The citizenship of a limited partnership, such as

CPChem, is determined by the citizenship of its members, both limited and general.

*See Bankston v. Burch*, 27 F.3d 164, 168 (5th Cir. 1994) (citation omitted).  CPChem's

Notice of Removal [1] identifies neither its partners nor their respective citizenship.  Like

a limited partnership, "the citizenship of a LLC is determined by the citizenship of all of

its members."  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008);

*see also Lawson v. Chrysler LLC*, No. 4:08cv19, 2009 WL 961226, at *2 (S.D. Miss. Apr.

7, 2009) (citing cases finding that citizenship must be traced through the various

organizational levels of a LLC or LP).  The Notice of Removal says nothing about the

members of Defendant Drilling Specialties Company, L.L.C.  A corporation is

considered to be a citizen of the state where it was incorporated and the state where it

maintains its principal place of business for purposes of diversity.  *See* 28 U.S.C. §

1332(c)(1).  The states where Defendants Montello, Inc. and Dow Chemical Company

---

Miss. 2004) (rejecting the defendants' fraudulent joinder arguments since the complaint
stated at least one claim).

maintain their principal places of business are not identified in the Notice of Removal.

CPChem's blanket assertion that no properly joined defendant "is a citizen of

Mississippi"[7] falls short of the Fifth Circuit's requirement "of clear, distinct, and precise

affirmative jurisdictional allegations." *Getty Oil Corp.*, 841 F.2d at 1259; *cf. Harrell v.*

*Yokohoma Tire Corp.*, No. 3:08cv565, 2011 WL 1812785, at *6 (S.D. Miss. May 4, 2011)

(finding, *sua sponte*, averments indicating that defendants did not maintain their

principal places of business in Mississippi and were incorporated "in states other than

the State of Mississippi" to be insufficient under *Getty Oil*).  The Court is prohibited from

merely assuming that diversity of citizenship exists between Hammond and any

Defendant.  *See Getty Oil Corp.*, 841 F.2d at 1260.

### III.  CONCLUSION

For the foregoing reasons, Hammond's Motion to Remand [10] will be granted.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Remand [10]

is granted.  A separate order remanding this cause to the Circuit Court of Marion

County, Mississippi shall follow.

SO ORDERED AND ADJUDGED this the 12th day of February, 2015.

> *s/Keith Starrett*
> UNITED STATES DISTRICT JUDGE

---

[7] (Notice of Removal [1] at ¶ 14.)